UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BRIAN SCOTT HUDSON,

                    Petitioner,

v.                                          Case No. 3:04-cv-54-32MMH

JAMES R. MCDONOUGH,[1]
et al.,

                    Respondents.
_____

**<u>ORDER</u>**[2]

**I. Status**

     Petitioner Brian Scott Hudson, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) and Memorandum of Law (Doc. #3) pursuant to 28 U.S.C. § 2254 on January 28, 2004.  Petitioner challenges a 1998 state court (Bradford County, Florida) judgment of conviction for escape on the following grounds:  (1) the trial court erred in failing to

_____

     [1] James R. McDonough, the Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for James V. Crosby, Jr., pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

     [2] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

instruct the jury on element two of the offense of escape; (2) ineffective assistance of trial counsel for insisting that Petitioner proceed to trial; (3) ineffective assistance of trial counsel for failure to file a pretrial motion requesting that the jury be instructed regarding Petitioner's theory of the defense; and, (4) ineffective assistance of trial counsel for failure to object and preserve for appellate review the State's failure to establish that Petitioner was under a valid arrest.

Respondents filed an Answer in Response to Order to Show Cause (Doc. #10) (hereinafter Response).  They submitted exhibits in support of their Response.[3]  Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #6).  Petitioner has filed a Reply.  See Petitioner's Traverse in Response (Doc. #11).  This case is now ripe for review.

## II. Procedural History

Petitioner Hudson was charged with battery upon a law enforcement officer and escape.  Ex. A, Information, filed October 7, 1997, at 1-2.  Petitioner was convicted by a jury of escape, as charged in the Information, and sentenced as a habitual felony offender to fifteen years of imprisonment; the jury found him not guilty of the battery upon a law enforcement officer.  Ex. B,

---

[3] Respondents' exhibits will be hereinafter referred to as "Ex."

Verdict, filed March 18, 1998; Ex. C, Judgment, filed May 5, 1998; see http://www.dc.state.fl.us/ActiveInmates (website for the Florida Department of Corrections); Ex. D, Transcript of the Motion for New Trial and Sentencing Hearing, dated May 5, 1998, at 13; Ex. TT, Transcript of the Jury Trial (hereinafter Tr.).

On direct appeal, Petitioner Hudson raised the following claims: (1) the lower court erred in failing to instruct the jury on the lesser alternative of resisting arrest without violence, and (2) the lower court erred in failing to instruct on element two of escape. Ex. E, Initial Brief. The State filed an Answer Brief. Ex. F. On November 2, 1999, the appellate court per curiam affirmed without issuing a written opinion. Hudson v. State, 744 So.2d 992 (Fla. 1st DCA 1999) (table opinion); Ex. G. The mandate was issued on November 18, 1999. Ex. H.

On or about December 27, 1999, Petitioner filed a state petition for writ of habeas corpus, claiming that his appellate counsel was ineffective for failure to raise the following issue on direct appeal: the lower court's denial of the motion for new trial. Ex. I. On February 10, 2000, the appellate court per curiam denied without issuing a written opinion. Hudson v. State, 752 So.2d 602 (Fla. 1st DCA 2000) (table opinion); Ex. J.

On or about March 23, 2000, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising the following ineffectiveness claims: (1) ineffective

assistance for counsel's insisting that Petitioner proceed to trial; (2) ineffectiveness for failure to file a pretrial motion to have the State agree to the initial standard jury instructions; (3) ineffectiveness for failure to file a pretrial motion to have the jury instructed on his theory of the defense; (4) ineffectiveness for failure to object and preserve the State's failure to establish that Petitioner was under a valid arrest; (5) ineffectiveness for failure to request a special jury instruction as to what constitutes a valid arrest; (6) ineffectiveness for failure to object to the due process violation of the State's undermining the reliability of the fact-finding process; and, (7) ineffectiveness for failure to request the appropriate jury instructions.  Ex. K. The State responded, and Petitioner replied.  Ex. L; Ex. M.  On March 26, 2002, the trial court denied the motion for post conviction relief.  Ex. N.  On October 8, 2002, the court denied Petitioner's motion for rehearing.  Ex. O; Ex. P.

On appeal, Petitioner raised grounds one, two, five and seven. Ex. Q; Ex. R.  The State filed a Motion to Strike the Initial Brief.  Ex. S.  On March 10, 2003, the appellate court granted the State's Motion to Strike the Initial Brief, and granted Petitioner additional time to file an amended brief.  Ex. U.  Petitioner filed an amended initial brief, raising grounds one, two, five and seven. Ex. V.  The State filed a notice that it would not file an answer brief.  Ex. W.  On August 27, 2003, the appellate court per curiam

4

affirmed without issuing a written opinion.  <u>Hudson v. State</u>, 856
So.2d 983 (Fla. 1st DCA 2003); Ex. X.  On October 2, 2003, the
court denied Petitioner's motion for rehearing.  Ex. Y; Ex. Z.  On
October 20, 2003, the mandate was issued.  Ex. AA.

Petitioner's Petition (signed on January 26, 2004, and filed
in this Court on January 28, 2004) is timely filed within the one-
year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at
3-5.

### III. EVIDENTIARY HEARING

A habeas corpus petitioner is entitled to an evidentiary
hearing in federal court if he alleges facts which, if proven,
would entitle him to habeas corpus relief.  <u>Smith v. Singletary</u>,
170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); <u>Cave v.
Singletary</u>, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing <u>Townsend
v. Sain</u>, 372 U.S. 293 (1963)).  Here, the pertinent facts of the
case are fully developed in the record before the Court.  The Court
can "adequately assess [Petitioner's] claim[s] without further
factual development." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th
Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004).  Therefore, an
evidentiary hearing will not be conducted by this Court.

### IV. Standard of Review

On April 24, 1996, the President signed into law the
Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-
132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was

5

filed after the effective date of AEDPA, the Court will analyze

Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.

> The Anti-Terrorism and Effective Death
> Penalty Act of 1996 (AEDPA) governs this
> [action] and limits our review of the
> decisions of the state courts:
>
>> A federal court may not grant a
>> petition for a writ of habeas corpus
>> to a state prisoner on any claim
>> that has been adjudicated on the
>> merits in state court unless the
>> adjudication (1) resulted in a
>> decision that was contrary to, or
>> involved an unreasonable application
>> of clearly established federal law,
>> or (2) resulted in a decision that
>> was based on an unreasonable
>> determination of the facts in light
>> of the evidence presented in state
>> court.
>
> Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th
> Cir. 2003) (citations omitted). . . .

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th

Cir.), cert. denied, 126 S.Ct. 803 (2005).  Furthermore, AEDPA also

directs that a presumption of correctness be afforded to factual

findings of state courts, which may be rebutted only by clear and

convincing evidence.  See 28 U.S.C. § 2254(e)(1).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling.  Wright v. Sec'y for the Dep't of

<u>Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000) (en banc) <u>cert</u>. <u>denied</u>, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Id</u>. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim

7

is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.

Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam) (footnotes omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

In <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985) (footnote omitted), the Court held:

> that the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the standard of attorney competence already set forth in <u>Tollett v. Henderson</u>, <u>supra</u>, and <u>McMann v. Richardson</u>, <u>supra</u>. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

The same two-part test also applies when a habeas petitioner asserts that, but for his counsel's ineffectiveness, he would have <u>accepted</u> a plea agreement; however, to show prejudice in such a case, the petitioner must show there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial. <u>Smith v. Singletary</u>, 170 F.3d at 1053 (citations omitted).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner Hudson claims that the trial court erred in failing to instruct the jury on element two of the offense of escape. Petition at 5. As acknowledged by Respondents (Response at 6), Petitioner exhausted this claim on direct appeal. Ex. E, Initial

Brief at 20-21.   Respondents contend, and this Court agrees, that Petitioner has raised a state law issue that is not cognizable on federal habeas corpus review.   Response at 6-7.

Thus, to the extent that Petitioner has raised, in ground one, the same claim he presented on direct appeal, such a claim presents an issue of state law that is not cognizable on federal habeas review.   The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[4]   Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).   The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be available.   See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).   The Supreme Court has often held that federal habeas relief does not lie for errors of state law.   Clearly, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law.   See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).   "This limitation on federal habeas review is of equal force when a petition, which actually involves state

---

[4] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §2254(a).

law issues, is 'couched in terms of equal protection and due process.'"  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Even assuming *arguendo* that Petitioner has raised a claim of federal constitutional dimension in this Court and further assuming that he exhausted the federal claim in state court,[5] the claim is without merit.  The Eleventh Circuit Court of Appeals has explained that a federal court's "limited role on habeas review, when faced with a challenge to a state law jury charge, is to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process."  Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997), cert. denied, 523 U.S. 1023 (1998) (citing Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)).

> A jury instruction that "was allegedly
> incorrect under state law is not a basis for
> habeas relief," id. at 71-72, 112 S.Ct. at
> 482, because federal habeas review "is limited
> to deciding whether a conviction violated the
> Constitution, laws, or treaties of the United
> States." Id. at 68, 112 S.Ct. at 480.  Unlike
> state appellate courts, federal courts on

---

[5] To the extent that the appellate court adjudicated the federal constitutional issue on the merits, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  As previously noted, for a state court's resolution of a claim to be an adjudication on the merits, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright, 278 F.3d at 1255.

> habeas review are constrained to determine
> only whether the challenged instruction,
> viewed in the context of both the entire
> charge and the trial record, "'so infected the
> entire trial that the resulting conviction
> violate[d] due process.'"   <u>Id</u>. at 72, 112
> S.Ct. at 482 (quoting <u>Cupp v. Naughten</u>, 414
> U.S. 141, 147, 94 S.Ct. 396, 400-01, 38
> L.Ed.2d 368 (1973)).

<u>Jamerson v. Secretary for the Dep't of Corrections</u>, 410 F.3d 682,

688 (11th Cir. 2005).

As previously noted, on October 7, 1997, Petitioner Hudson was

charged with battery upon a law enforcement officer and escape.

Ex. A, Information.  On March 18, 1998, the jury found him guilty

of escape, as charged in count two of the Information, and found

him <u>not</u> guilty of battery upon a law enforcement officer.  Ex. B,

Verdict.  The Information, with respect to count two (escape), read

as follows:

> And ROD SMITH, State Attorney for the
> Eighth Judicial Circuit, prosecuting for the
> State of Florida, under oath, further alleges,
> by information that **BRIAN SCOTT HUDSON** in
> Bradford County[,] Florida, on or about the
> 25th day of September, 1997, being lawfully in
> the custody of Lt. Roman Alvarez, Bradford
> County Sheriff's Office, and/or being
> transported to or from a place of lawful
> confinement, did escape or attempt to escape
> therefrom, contrary to § 944.40, Florida
> Statutes.

Ex. A at 1.

Fla. Stat. § 944.40 (1997) states:

> Any prisoner confined in any prison, jail,
> road camp, or other penal institution, state,
> county, or municipal, working upon the public

12

> roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.   The punishment of imprisonment imposed under this section shall run consecutive to any former sentence imposed upon any prisoner.

At the trial, the State called two witnesses: Lieutenant Roman Alvarez and Deputy Sheriff E.J. Kaiser. Lieutenant Alvarez testified that, on September 25, 1997, he knew there was an outstanding warrant against Petitioner Hudson and, when he saw Petitioner at the mini mart that evening, he exited his car to speak to Petitioner. Tr. at 30. After Lieutenant Alvarez and Petitioner exchanged brief, pleasant greetings, Lieutenant Alvarez advised Petitioner that he had a warrant for his arrest and stated, "You're under arrest and I want to [sic] you to go with me." Id. at 31, 45. Petitioner knew who Lieutenant Alvarez was and knew he was with the Sheriff's Office. Id. at 45. Lieutenant Alvarez testified that they "were in very close proximity," and Alvarez reached out to turn Petitioner to place the handcuffs on him. Id. at 31. Lieutenant Alvarez had the handcuffs out (which had been on his belt) and was engaged in the process of clipping them onto Petitioner's wrists when Petitioner said, "Wait, Mr. Alvarez." Id. at 32, 33, 45, 47. Lieutenant Alvarez had the handcuffs in his right hand and was attempting to handcuff Petitioner when Petitioner backed away from him. Id. at 31. When Petitioner

13

backed away from him, Lieutenant Alvarez reached up and put his left arm around Petitioner's neck, but Petitioner pushed away. Id. at 31-32, 47. Lieutenant Alvarez then "reached again and got a hold of his t-shirt." Id. at 32, 49. Petitioner "was trying to get away" and "break my hold on his t-shirt." Id. Petitioner was able to break Lieutenant Alvarez' hold of his t-shirt and then ran away. Id. at 33.

Lieutenant Alvarez specifically stated that he told Petitioner that he was under arrest. Id. at 35.

> He was in my custody at that time. I not
> only verbally told him he was under arrest,
> but I had my hand on him and had turned him
> around and was effectively beginning the
> process of transporting him and putting him in
> jail.

Id. at 35-36. On cross-examination, Lieutenant Alvarez stated that the entire incident from the time he placed Petitioner under arrest until when Petitioner ran away lasted "[u]nder one minute." Id. at 41-42.

Deputy Sheriff Kaiser testified that he transported Petitioner Hudson to the Bradford County Sheriff's Office two days later, and Petitioner advised him that the reason he ran from Lieutenant Alvarez a couple of days before "was because he respected Lieutenant Alvarez because he is a minister and that [Petitioner] had some drugs on him that day." Id. at 58. Officer Kaiser was not present on September 25th when Lieutenant Alvarez attempted to

14

arrest Petitioner.  Id. at 58-59.  The State then rested its case. Id. at 61.

The defense called Edward C. Williams, Petitioner's relative[6], to testify on Petitioner's behalf.  Mr. Williams witnessed the September 25th incident and described the events for the jury.  Id. at 64.

> Well, when the lieutenant got out of his vehicle, he motioned to Scott to come over to him and Scott walked over to him.  And I didn't hear what they were saying.  And they was -- and I saw that the lieutenant grabbed Scott by the arm.  And at that time it looked as if he went to get his handcuffs to put on Scott's arm.
>
> . . . .
>
> It was a short talk.  It was I would say about thirty seconds or so.
>
> . . . .
>
> Well, as he reached out and grabbed Scott around the arm and he went for his handcuffs to put it on his arm, I saw Scott sort of snatch away and turn.  And the lieutenant reached out and caught him in the chest with his hand and grabbed his shirt.  And Scott backed away from him and made a quick turn and ran off.
>
> . . . .
>
> Mr. Hudson, Scott was just twisting and turning his body trying to get away.
>
> . . . .

_____

[6] Mr. Williams' wife and Petitioner's father are first cousins.  Tr. at 63, 76.

> I stood there and watched the whole incident.
>
> . . . .
>
> As [Lieutenant Alvarez] grabbed him, he was going for his cuffs at the same time.  He had them out and he was trying to put them on him and Scott was snatching away.

Id. at 67, 68, 71, 72, 78.  The whole incident lasted "[n]o longer than a minute."  Id. at 74.  Defense counsel moved for a judgment of acquittal as to both counts; however, the trial judge denied the motion.  Id. at 80-83.

During the charge conference, the prosecutor requested that, as to the escape charge, the jury be instructed that transportation to a place of confinement begins at the time the suspect is placed under arrest.  Id. at 86.  Defense counsel objected to the State's request, arguing that this definition was not part of the standard jury instruction on escape and that transportation was one of the elements of the offense.  Id. at 87.  The trial judge denied the State's request.  Id. at 92.

The prosecutor then requested that the second portion of the standard instruction on escape be deleted, citing State v. Ramsey, 475 So.2d 671 (Fla. 1985).[7]  Tr. at 99.  The initial draft of the

---

[7] The Florida Supreme Court held that, for a conviction under the escape statute, the State need only show the right to legal custody and a conscious and intentional act of the defendant in leaving the established area of such custody.  Ramsey, 475 So.2d 671, 672 (Fla. 1985) (quoting State v. Akers, 367 So.2d 700, 702 (Fla. 2d DCA 1979)).

16

instructions, which was presented to the court and based upon the standard instructions for escape, provided as follows:

> 1. Brian Scott Hudson was under arrest and in the lawful custody of a law enforcement official.
>
> 2. While a prisoner, Brian Scott Hudson was being transported to or from a place of confinement.
>
> 3. Brian Scott Hudson escaped or attempted to escape, intending to avoid lawful confinement.

Ex. A at 34.   The State claimed that, since the standard instruction for section two stated that the jury should be instructed on either 2(a), 2(b) or 2(c) as applicable[8], the court was not required to instruct on any of these alternatives if none was applicable.   Tr. at 99.   The State further contended that, under Ramsey, the State was only required to prove sections one and three.   Id. at 99-101, 104.   Defense counsel argued that the Florida Supreme Court approved the instructions and intended that one of the three alternatives under section two be given, depending on the facts of the case.   Id. at 100.   The defense also asserted that instruction 2(b) was applicable and was required under Fla. Stat. § 944.40, the statute defining the offense of escape.   Id. at 102.

---

[8] In the standard instructions for escape, element two provides:  While a prisoner, (defendant) was [confined at (name institution)]; [being transported to or from a place of confinement]; [working on a public road].  Fla. Std. Jury Instr. The margin note directs the judge to "[g]ive 2a, 2b, or 2c as applicable." Id.

After reading the <u>Ramsey</u> case and hearing the arguments of counsel, the trial judge granted the State's request to delete the second portion of the standard jury instructions, stating in pertinent part:

> And the note [in the standard instructions] which says give 2(a) or (b) or (c) as applicable would, after having read specifically that language of *Ramsey*, lead me to say that, at this point in time, given the specific nature of *Ramsey* saying that transportation to a place of confinement begins at the time when a suspect is placed under arrest.
>
> A literal interpretation of the words of the statute leads to the conclusion that one who meets the definition of prisoner is being transported to a place of confinement at the point in time when he becomes a prisoner. I think that at this point in time what we're going to do is just delete Section 2 of the part of the proposed instructions which are entitled Florida Statute, Section 944.40, escape.

<u>Id</u>. at 110 (emphasis added). The trial judge stated that his decision was based on the Florida Supreme Court's ruling in <u>Ramsey</u>, 475 So.2d 671. Tr. at 111.

In closing argument as to the escape count, the State argued that it was required to prove two elements beyond a reasonable doubt: that Petitioner Hudson was under arrest and in the lawful custody of a law enforcement official and that Petitioner escaped or attempted to escape intending to avoid lawful confinement. <u>Id</u>. at 121-22. Defense counsel emphasized that the incident happened very quickly and asked the jury to consider whether Petitioner

Hudson was really in custody when he ran away. Id. at 130-31. He contended that, because the incident occurred in less than a minute, the events could not be separated into discrete units in which one event followed another event. Id. In rebuttal, the State again emphasized the elements of escape upon which the jury would be instructed. Id. at 135.

In instructing the jury, the trial judge stated:

> Before you can find the defendant guilty of escape, the State must prove the following two elements beyond a reasonable doubt. One, Brian Scott Hudson was under arrest and in the lawful custody of a law enforcement official. Two, Brian Scott Hudson escaped or attempted to escape intending to avoid lawful confinement.

After retiring to deliberate, the jury submitted a question to the judge, asking for the definition of escape. Id. at 150. The defense and the State agreed that the jury should be told to rely on the instructions given by the trial judge. Id. The jury later returned, finding Petitioner Hudson not guilty on count one (battery upon a law enforcement officer) and guilty on count two (escape). Ex. B, Verdict.

Based on a thorough review of the record, this Court concludes that the challenged instruction on escape, viewed in the context of both the entire jury charge and the trial record, did not so infect the trial so that the resulting conviction violated due process. Therefore, the Petitioner is not entitled to relief on the basis of this claim.

## B. Ground Two

As ground two, Petitioner claims that defense counsel was ineffective for insisting that he proceed to trial.  Specifically, Petitioner states:

> Appellant a[ss]erts trial counsel was ineffective by insisting that Brian Hudson take his case to trial, as oppose[d] to accepting the State's offer of five years without being habitualized.
>
> Counsel as[s]ured Appellant that he would win at trial because he would only be charged with resisting arrest without violence.

Petition at 6.  Respondents acknowledge that Petitioner raised this claim in his Rule 3.850 motion and in his appeal of the Rule 3.850 motion.  Response at 10.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

Petitioner, in his Rule 3.850 motion, stated that counsel "correctly informed" him that the battery upon a law enforcement official charge could not be proven at trial and that counsel also advised him "before trial that the charge of escape did not have any category I or II lesser included offenses . . . ." Ex. K at 3. Further, Petitioner was certainly aware that he had been charged with escape, not resisting arrest without violence.

While Petitioner alleges that counsel did not request a special instruction on a lesser offense of resisting arrest without violence, counsel did in fact request a special instruction. At the charge conference, defense counsel argued as follows:

> If the Court is going to add onto the escape instruction by giving definitions that the State wants given here, then I would ask the Court that unless -- the Court independent of that request of the State to instruct the jury on resisting arrest without violence.
>
> It is not listed as a category one or two lesser included on either one of these charges, however along the same lines as what Mr. Libby [the prosecutor] is arguing, the facts of the case that the Court has heard here today and Mr. Williams' testimony, should the jury choose to believe that that is what happened, the version he related would certainly support what we all commonly refer to and think of as resisting arrest without violence by the fact that he fled.
>
> If they find that he did not intentionally touch or strike the officer, that all he did was pull away, snatch away and run, then I would ask the Court to also add an instruction to give them the option of finding him guilty or not guilty on a lesser offense of resisting arrest without violence. It

> clearly is supported by the testimony that's
> been presented to the jury.  Of course it's up
> to them which testimony they believe and find
> most credible.
>
>         . . . .
>
>         So I would make those objections to the
> request of the State and also request the
> lesser resisting arrest without violence be
> given, the standard instruction.

Tr. at 90-91.

In closing argument, defense counsel downplayed Petitioner's
September 25th actions, stating that the facts of the case show a
brief encounter, questionable custody and conflicting testimony.
Id. at 130-31.  At the sentencing hearing, counsel argued for a
lighter sentence in view of the facts of the case.

>         Many times we will see very similar
> conduct, in essence running from the officer
> when he's trying to arrest him, sometimes
> charged as resisting arrest without violence.
> And certainly as the Court addressed that
> issue at trial, the State has the choice of
> which charges they decide to file and prove,
> so I'm not saying it was improper for them to
> proceed on escape.
>
>         They had their choice and that's the
> charge they decided to go on, but the facts
> certainly could have supported a lesser charge
> and it's not uncommon for us to see this type
> of conduct prosecuted as resisting arrest
> without violence.

Ex. D, Transcript of the Motion for New Trial and Sentencing
Hearing, dated May 5, 1998, at 7-8.

The record reflects that Petitioner's decision to go to trial
was voluntary and knowing and was not the result of any misadvise

22

by counsel.  Petitioner was made aware of the risks of proceeding to the trial.  Specifically, the trial judge, at a pretrial hearing, informed Petitioner that he could be sentenced to anything up to thirty years.  Ex. N, Transcript of a Pretrial Hearing, dated January 13, 1998, at 4.  The following colloquy ensued.

> THE COURT: You have a right to a trial by jury and the sole burden of proof is on the state to prove the facts in this case.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: But if you elect to go to trial on this case you have to understand what the potential sentence might be.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you prepared to accept that if the jury returns a verdict of guilty?
>
> THE DEFENDANT: Yes, sir.  I have to.  I live by it or die by it, your Honor.

Id.  And, on the first day of trial, Petitioner again stated that he wished to proceed to trial.

> [DEFENSE COUNSEL]: And after having discussed it with my client, he decided he does wish to go ahead and proceed with the trial today.  Is that all correct, Mr. Hudson?
>
> THE DEFENDANT: Yes.
>
> [DEFENSE COUNSEL]: So we would just like that on the record.

Tr. at 3.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not

23

shown that a reasonable probability exists that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial.  Smith v. Singletary, 170 F.3d at 1053.  Thus, this ineffectiveness claim is without merit.

### C. Grounds Three and Four

As ground three, Petitioner claims counsel was ineffective for failure to file a pretrial motion requesting that the jury be instructed regarding Petitioner's theory of the defense. Specifically, Petitioner alleges:

> Appellant had alleged in his third ground for relief that trial counsel was ineffective for failing to file a pre-trial motion requesting that the jury be instructed regarding Appellant's theory which was what defines a valid arrest for the jury to have proceeded on this theory of defense, it would have required the jury be given the proper applicable instructions.  However, his attorney claimed only resisting arrest be proven.

Petition at 8.  Further, as ground four, Petitioner claims counsel was ineffective for failure to object and preserve for appellate review the State's failure to establish that Petitioner was under a valid arrest.  Id. at 9.

Respondents acknowledge that Petitioner raised these claims in his Rule 3.850 motion and further briefed ground four in his appeal of the Rule 3.850 motion.  Response at 14 n.4, 19.  The trial court adjudicated these claims on the merits.  In denying these claims, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

The defendant alleges in his third ground for relief that his counsel was ineffective for his failure to file a pre-trial motion requesting that the jury be instructed regarding the defendant's theory of defense. See Defendant's Motion at p.5. As with the defendant's first and second grounds, the defendant fails to allege that counsel's performance affected the outcome of the trial. The only allegation as to the prejudice element is that had the defendant known prior to trial what the final instructions to the jury were to be, he would have accepted the state's plea offer in lieu of going to trial. Therefore, since there is no allegation that the reliability or outcome of the trial was affected, the court need not make any specific finding as to counsel's conduct as the prejudice component has not been satisfied, as set forth in Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla. 1986). The defendant's Motion is denied as to the third ground.

. . . .

The defendant next alleges that his trial counsel was deficient for failing to object or preserve the State's failure to establish the defendant was under valid arrest. See Defendant's Motion at pages 5-6. However, the evidence presented at trial sufficiently established that the defendant had been placed under lawful arrest prior to his escaping and fleeing from Lt. Alvarez. Lt. Alvarez had the intent to arrest the defendant pursuant to a capias issued for the defendant's arrest. (TT page 50, Lines 20-25).

Secondly, there was an actual or constructive seizure of the defendant. It was uncontradicted at trial that Lt. Alvarez told the defendant that he was under arrest, (TT page 31, lines 11-13; page 35, lines 19-22; page 35-36, lines 23-2), that Lt. Alvarez grabbed the defendant by the arm to restrain the defendant (TT page 31, lines 16-18; page 67, lines 22-24; page 68, lines 13-17) prior to the defendant fleeing. The defendant's own

25

witness, Edward Williams, testified that Lt.
Alvarez had grabbed the defendant's arm, thus
restraining the defendant prior to the
defendant snatching away and escaping.  See TT
page 31, lines 16-18.  Lt. Alvarez and Edward
Williams both testified that Lt. Alvarez
grabbed the defendant by the shirt as the
defendant was fleeing.  TT page 32, lines 1-3;
page 68, lines 13-17.  Lt. Alvarez further
testified that he also grabbed the defendant
around the neck in an attempt to prevent the
defendant from escaping.  TT page 31, lines
23-24.  Thus[,] there is abundant support in
the transcripts of the defendant being
actually or constructively detained at the
time he escaped.

Thirdly, it was uncontradicted at trial
that Lt. Alvarez informed the defendant that
he was under arrest for a capias.  See TT page
31, lines 11-13; page 35, lines 19-22; pages
35-36, lines 23-2.  It was also uncontradicted
at trial that the defendant knew Lt. Alvarez
was a law enforcement officer, as Edward
Williams testified that the defendant told him
as Alvarez pulled up that Alvarez was a law
enforcement officer.  See TT page 65, lines
24-25.  Furthermore, Deputy Kiser testified
that the defendant stated to Deputy Kiser that
the reason he fled from Alvarez was because
the defendant possessed drugs at the time he
escaped. See TT page 58, lines 12-15. Lt.
Alvarez testified that the defendant made a
similar statement to Alvarez as well. See TT
page 40, lines 7-9. Clearly, the evidence
shows that Alvarez informed defendant that he
was under arrest and that the defendant knew
he was under arrest at the time he fled.

The evidence presented at trial clearly
refutes the defendant's allegation that the
State did not prove that he was under a valid
arrest at the time he fled and escaped. The
evidence at trial is uncontradicted that the
defendant was under a valid arrest at the time
he fled and escaped. Furthermore, the
defendant has not met the prejudice component
of an ineffective assistance of counsel claim,

as he has not shown that the result of the
trial would have been different had trial
counsel objected to and/or moved for judgment
of acquittal alleging that [the] State did not
show that the defendant was under a valid
arrest.  As cited by the undersigned in
response to the defendant's Motion for
Judgment of Acquittal (See TT at page 82), the
Florida Supreme Court in <u>State v. Ramsey</u>, 475
So.2d 671 (Fla. 1985) found that in a
situation similar to the case sub judice, but
in which the officer had not physically
restrained the defendant, the facts supported
an [e]scape conviction.  As stated above, "[a]
court considering a claim of ineffective
assistance of counsel need not make a specific
ruling on the performance component of the
test when it is clear that the prejudice
component is not satisfied." <u>Maxwell v.
Wainwright</u>, 490 So.2d 927, 932 (Fla. 1986).
Since the State presented sufficient evidence
of the defendant having been placed under
arrest prior to his resistance and escape, the
defendant can not say that had trial counsel
objected and preserved the issue for appeal
that the results would have been different.
Therefore, the defendant's Motion is denied as
to the fourth allegation of ineffective
assistance of counsel.

      .  .  .  .

    The defendant next alleges that his trial
counsel was deficient for failing to request a
jury instruction, which defined "valid
arrest."  See Defendant's <u>Motion</u> at page 8.
The reasons set forth above pertaining to the
defendant's fourth ground is [sic] also
applicable for the fifth ground.  The evidence
presented at trial clearly shows that the
defendant was placed under valid arrest prior
to his resistance and escape.  The defendant
had been informed he was being placed under
arrest for an outstanding capias.  See TT page
31, lines 11-13; page 35, lines 19-22; page
35-36, lines 23-2.  The defendant had been
physically detained/restrained when Lt.
Alvarez grabbed the defendant by the arm to

27

restrain the defendant prior to the defendant fleeing.  See TT page 31, lines 16-18; page 67, lines 22-24; page 68, lines 13-17.  The defendant's own witness, Edward Williams, testified that Lt. Alvarez had grabbed the defendant's arm, thus restraining the defendant prior to the defendant snatching away and escaping.  See TT page 31, lines 16-18.  Lt. Alvarez and Edward Williams both testified that Lt. Alvarez grabbed the defendant by the shirt as the defendant was fleeing.  TT page 32, lines 1-3; page 68, lines 13-17. Lt. Alvarez further testified that he also grabbed the defendant around the neck in an attempt to prevent the defendant from escaping.  TT page 31, lines 23-24.  Thus[,] there is abundant support in the transcripts of the defendant being actually or constructively detained at the time he escaped.

It was uncontradicted at trial that Lt. Alvarez informed the defendant that he was under arrest for a capias.  See TT page 31, lines 11-13; page 35, lines 19-22; pages 35-36, lines 23-2.  It was also uncontradicted at trial that the defendant knew Lt. Alvarez was a law enforcement officer, as Edward Williams testified that the defendant told him as Alvarez pulled up that Alvarez was a law enforcement officer.  See TT page 65, lines 24-25. Furthermore, Deputy Kiser testified that the defendant stated to Deputy Kiser that the reason he fled from Alvarez was because the defendant possessed drugs at the time he escaped.  See TT page 58, lines 12-15.  Lt. Alvarez testified that the defendant made a similar statement to Alvarez as well.  See TT page 40, lines 7-9.  Clearly, the evidence shows that Alvarez informed defendant that he was under arrest and that the defendant knew he was under arrest at the time he fled.

Due to the overwhelming evidence presented at trial that the defendant had been placed under valid arrest at the time he resisted, fled and escaped, it can not be said that the outcome of the trial would have been

28

> different had the jury been instructed on a
> definition of "valid arrest".   Therefore,
> regardless of whether counsel was ineffective
> for not request[ing] said instruction, there
> is no prejudice.   Thus, the prejudice
> component has not been met, and the
> defendant's Motion is denied as to the fifth
> allegation of ineffective assistance of
> counsel.

Ex. N at 3-6.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.   Accordingly, the claims were rejected on the merits by the state trial and appellate courts.   Thus, there are qualifying state court decisions.   These grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.   The Court must next consider the "contrary to" and "unreasonable application" components of the statute.   "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."   Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of

29

the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  Petitioner has not established that no competent attorney would have taken the action that counsel, here, chose. Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.  Thus, these ineffectiveness claims are without merit.

Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of February, 2007.

]

TIMOTHY J. CORRIGAN
United States District Judge

sc 2/9
c:
Brian Scott Hudson
Ass't Attorney General (Holland)